**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**UNITED STATES OF AMERICA FOR
THE USE AND BENEFIT OF BRD, LLC**                                   **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 2:07cv69KS-MTP**

**ROBERT E. GRAVES, INC.; ASHBRITT
ENVIRONMENTAL SERVICES, INC.; a/k/a
ASHBRITT, INC.; And FIDELITY INSURANCE
COMPANY**                                                           **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the court on a Motion for Partial Summary Judgment **[#86]** filed on behalf of defendant, Robert Graves, Inc.  The court, having reviewed the motion, the responses, the pleadings and exhibits on file, the briefs of counsel and being otherwise fully advised in the premises finds that the motion is not well taken and should be denied.  The court finds specifically as follows:

On September 8, 2005, in the aftermath of Hurricane Katrina, the defendant Ashbritt Environmental Services, Inc. ("Ashbritt") entered into a contract with the United States Corps of Engineers ("Corp") for, among other things, the grinding and removal of debris in certain areas of Mississippi.  While, the contract covered several job sites, the only two job sites relevant to this suit and this Motion are the sites in Hattiesburg and Petal, Mississippi.  Ashbritt subcontracted a portion of this work to Graves, and Graves subcontracted a portion of its work to various other subcontractors, including the plaintiff, BRD.

Graves' contends that its subcontract with the plaintiff contained a "pay if paid" clause." Under the contract, Graves agreed to pay the plaintiff $2.00 for every cubic yard of debris the plaintiff ground at the job sites. However, according to Graves, the payment was expressly conditioned upon payment to Graves from the general contractor as follows: "ROBERT E. GRAVES, INC. agrees to pay BRD, LLC seven days after invoice is received by ROBERT E. GRAVES, INC., provided ROBERT E. GRAVES, INC. has received payment from the General Contractor." The contract also provided for a percentage retainage until completion of the job and payment therefor.

After executing the subcontract, the plaintiff proceeded to grind debris at both job sites. Ashbritt representatives would calculate the cubic yards hauled each week to the particular job site and provide that information to Graves' personnel. The Corps would compensate Ashbritt, and Ashbritt would compensate Graves, based upon these calculations provided to Graves. Graves asserts that its personnel recorded these figures into a spreadsheet in order to properly document the correct amount of cubic yards hauled and/or ground.

According to the defendant, the plaintiff admits Graves has paid it $1,208,820.60 for cubic yards ground at both job sites. This amount constitutes payment for 524,582 cubic yards ground at the Hattiesburg job site and 126,928 cubic yards at the Petal job site for a total of 651,510 cubic yards. There does not appear to be any dispute as to the amounts ground and paid at the Hattiesburg job site. BRD has stated that it ground 524,582 cubic yards at the Hattiesburg job site and that Graves has paid it for those 524,582 cubic yards. Instead, the crux of the dispute between Graves and BRD appears to turn on the amount of compensation due BRD for its work on the Petal  job

-2-

site.  The defendant argues that if BRD is only entitled to compensation for the 126,928 cubic yards for which it has already been paid, BRD is now due nothing more than its retainage.

According to Graves, Ashbritt only compensated Graves for 523,670 cubic yards ground at Petal and of those cubic yards, the following subcontractors have ground, and Graves has compensated them for, the following amount of cubic yards: Karnes Landscapers ground 293,000 cubic yards, Minuteman Wood Recycling ground 78,073 cubic yards, J.M. Cook Company ground 35,800cubic yards, National ground 4,850 cubic yards. Graves also asserts that the plaintiff has no evidence to dispute these amounts.  Adding in the 126,928 yards for  which Graves has already compensated BRD, Graves alleges that it has paid its subcontractors more than Ashbritt has paid it. While Ashbritt has compensated Graves for 523,670 cubic yards for the Petal site, Graves has compensated its subcontractors for 538,651 cubic yards -- an alleged overpayment of 14,981 cubic yards.  Thus, Graves argues that although BRD has been compensated for 651,510, it seeks compensation for additional cubic yards of debris it allegedly ground and that the plaintiff's claims for compensation for such alleged additional cubic yards fail as a matter of law.

However, in its response to the motion, co-defendant Ashbritt states that "Robert E. Graves, Inc. processed a total of 577,814.8 cubic yards of debris hauled into the Petal site."   Ashbritt did not compensate based on the amount of debris ground, but on the amount of debris hauled in.  The plaintiff asserts "Apparently, Graves and BRD agree with the total number of cubic yards ground in Petal as 574,812 cubic yards." There is no such agreement as pointed out above.

The plaintiff has brought claims against the defendant Graves claiming that 1) Graves breached an oral contract to compensate BRD for traffic control services, 2) Graves breached the express written contract between the parties to pay for the grinding of debris or that Graves is liable to the plaintiff to pay for the grinding of debris under the theories of *quantum meruit* and/or unjust enrichment  and 3) Graves owes it for retainage withheld for hauling and grinding work.  The defendant's present motion attacks the plaintiff's claims for additional compensation under theories of breach of contract and *quantum meruit* and/or unjust enrichment.  It also seeks an order that any retainage due BRD is not payable until seven days after payment to Graves by Ashbritt. It does not address the plaintiff's claim for compensation for traffic control.

According to the plaintiff, the material dispute in this case is how many yards were ground by BRD in Petal while Graves asserts that the main factual determination is the amount of BRD-ground yards for which Ashbritt has paid Graves.  Graves contends that BRD only ground 126,928 cubic yards in Petal.  The plaintiff  contends that it ground 269,500 cubic yards.  According to the plaintiff, the other Petal subcontractors did not submit invoices and were paid on some unknown basis by Graves.  BRD argues that it  was the last subcontractor to the Petal site and ground all debris brought in from a certain date until grinding operation was completed in Petal and that, accordingly, other subcontractors were paid at an earlier time than BRD.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477

U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.

1992).  In making its determinations of fact on a motion for summary judgment, the

Court must view the evidence submitted by the parties in a light most favorable to the

non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

     The moving party has the duty to demonstrate the lack of a genuine issue of

material fact and the appropriateness of judgment as a matter of law to prevail on his

motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The

movant accomplishes this by informing the court of the basis of its motion, and by

identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

     "Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation

to respond unless the movant discharges [its] initial burden of demonstrating

[entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating

such for failure to respond to an opposed motion.  *Id.* at 709.

     However, once a properly supported motion for summary judgment is presented,

the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.

National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the

nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting

Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

The parties have submitted competing affidavits and substantial evidentiary documentation supporting each of their claims as to the amount of debris ground at Petal and, indeed, even hauled into Petal.  This is a classic situation of a dispute as to a genuine issue of material fact.

Likewise, the parties have presented differing evidence on the issue of whether or not Graves has been fully compensated by Ashbritt, thus entitling BRD to its retainage compensation.  Another classic situation of a dispute as to a genuine issue of material fact.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial Summary Judgment **[#86]** filed on behalf of defendant, Robert Graves, Inc., is denied.

SO ORDERED AND ADJUDGED this 5th day of September, 2008.

                                        *s/Keith Starrett*
                                        UNITED STATES DISTRICT JUDGE